## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DANIEL PETERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:19-cv-2050** |
| | ) | |
| **MINERVA SURGICAL, INC., a** | ) | |
| **Delaware Corporation, and DAVID** | ) | |
| **CLAPPER, an Individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS AND COMPEL ARBITRATION

COME NOW Defendants Minerva Surgical, Inc. ("Minerva") and Dave Clapper, and hereby submits Memorandum in support of their request to dismiss or, in the alternative, stay these proceedings and compel arbitration.

### STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT

Plaintiff worked for Minerva from July 31, 2015 through August 2018, when he resigned his employment.[1]  Plaintiff's employment with Minerva was governed by an Employment Agreement, which he signed at the outset of his employment.   While the signing of the Employment Agreement was a condition of employment, it was not presented to Plaintiff on a take-it-or-leave-it basis.  In fact, as paragraph 6 of Plaintiff's Complaint references, the parties to this case had history and knew one another well based on prior business dealings.  Plaintiff was given the opportunity to review and suggest revisions to the Employment Agreement, but ultimately he signed the Agreement.   The Employment Agreement contained the following provisions, among others: arbitration ("all controversies, claims, or disputes with anyone…arising

---

[1] Defendants acknowledge that Plaintiff contends his employment was involuntarily terminated, notwithstanding the reality that the actual facts belie such a contention.

out of, relating to, or resulting from my employment..”), choice of law (“pursuant to California law”), and forum selection (“I agree that any arbitration under this Agreement shall be conducted in San Mateo County, California”).  Plaintiff was aware of these provisions at the time he decided to sign the Agreement.

After a couple years of employment, Plaintiff requested leave as an accommodation for his alleged disabilities.  Plaintiff's restrictions included limitations on his ability to travel by airplane. Defendant Minerva agreed to his request.  On April 17, 2018, Plaintiff began his first period of medical leave.  The very next day, unbeknownst to Minerva, Plaintiff flew to the East Coast for a second interview with another company, Arrinex.  Also unbeknownst to Minerva at the time, Plaintiff sought and received reimbursement for his air travel from both Minerva **and** Arrinex for the first interview, which apparently occurred on or about March 15, 2018.  Over the course of the next several months, Plaintiff provided various medical notes and Minerva engaged in an interactive process with Plaintiff to determine if he could perform the essential functions of his job.  Notwithstanding Minerva's participation in this interactive discussion with Plaintiff, he filed his original Charge of Discrimination on May 22, 2018, against Minerva, claiming that Minerva failed to accommodate his request for reasonable accommodations.  Less than a month later, on June 13, 2018, Plaintiff filed an Amended Charge of Discrimination, claiming failure to accommodate and that Minerva further discriminated and retaliated against him by comments made to Arrinex.

Ultimately though, Plaintiff refused to provide significant and specific medical documentation that adequately addressed the issues of his restrictions, then-current medical condition, and whether he could actually perform the essential functions of his job.  Throughout this entire time, Minerva made clear to him that he was still an employee and was simply on

medical leave until the issues related to the medical documentation could be resolved. But Plaintiff continued to refuse to provide such medical documentation. Plaintiff then notified Minerva that he deemed their actions to be a termination from employment. In response, Minerva reiterated to Plaintiff that he was still considered an employee and had not terminated his employment. Plaintiff responded by advising many, if not all, of his Minerva colleagues that Minerva had terminated his employment. At that time, Minerva advised Plaintiff that they interpreted his actions – failing to provide the proper medical documentation requested by Minerva and his statements to his co-workers that he no longer worked for Minerva – as a resignation of employment. Plaintiff rejected that interpretation and continued to insist that Minerva involuntarily terminated his employment. But when Minerva explained that he was still employed and requested certain information from him, Plaintiff put the entire issue to rest by unequivocally stating in an email dated September 4, 2018 to Wendy Bowman from Minerva: "In summary to make is unarguably clear, I am no longer an employee."

Plaintiff claims he was treated improperly as it relates to his employment and eventual separation therefrom. On January 30, 2019, Plaintiff filed his Complaint against Minerva and Clapper asserting the following causes of action:

Count I – Disability Discrimination in violation of 42 USC 12101 (ADA)

Count II – Retaliation in violation of 42 USC 12101 (ADA)

Count III – Retaliation in violation of Kansas Public Policy (Whistleblower)

Count IV – Breach of Implied Contract

Count V – Tortious Interference with a Prospective Business Advantage or Relationship

Count VI – Declaratory Relief arising from Disputed Arbitration Provision Concerning Plaintiff's Employment by Defendant Minerva Surgical

Defendants deny these allegations and further assert that these claims, all of them, should be arbitrated as the parties agreed in the Employment Agreement signed by them.

## CONCISE STATEMENT OF THE FACTS

1.  Minerva is a medical technology company located at 101 Saginaw Drive, Redwood City, California, 94063.  Minerva has approximately 128 employees.  Defendant David Clapper is the Minerva's Chief Executive Officer ("CEO").

2.  Prior to his employment with Minerva, Plaintiff and defendant David Clapper knew each other well and were involved in a prior business relationship.  Plaintiff's Complaint, Doc. 1, para. 6.

3.  On or before July 31, 2015, Plaintiff accepted a Territory Manager position with Minerva.

4.  On July 31, 2015, Plaintiff Peterson signed and executed the *Minerva Surgical, Inc. At-Will Employment, Confidential Information, Invention Assignment, Arbitration and Non-Compete Agreement* (the "Employment Agreement").  See Exhibit A.  See also Plaintiff's Complaint, Doc. 1, paras. 139, 140, and 141 (alleging that Plaintiff signed the Employment Agreement).

5.  In relevant part, the Employment Agreement states:

> I agree that any and all controversies, claims, or disputes with anyone (including the company and any employee, officer, director, shareholder, or benefit plan of the company, in their capacity as such or otherwise), whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from my employment with the company or the termination of my employment with the company, including any breach of this agreement, shall be subject to binding arbitration . . . and pursuant to California law.

See Exhibit A, Employment Agreement, at 7-8.

6.  The Employment Agreement further states that "I agree that any arbitration under this Agreement shall be conducted in San Mateo County, California."  *Id.* at 8-9.

7.   Within the first year of his employment with Minerva, Plaintiff was moved from Territory Manager to the Area Sales Director position.  Plaintiff's Complaint, Doc. 1, para. 5.

8.   Plaintiff's supervisors at Minerva were defendant David Clapper and Thomas Pendlebury. Plaintiff's Complaint, Doc. 1, para. 13.

9.   In April 2018, Plaintiff requested and Minerva approved a medical leave of absence. Plaintiff's Complaint, Doc. 1, para. 14.

10. Plaintiff's medical leave of absence began on April 17, 2018.

11. While on his medical leave of absence, Plaintiff sought other employment and conducted interviews with other companies.  Plaintiff's Complaint, Doc. 1, paras. 17, 122, 123, and 124.

12. In fact, Plaintiff flew to the East Coast on April 18, 2018, the day after his medical leave of absence began, for a final job interview with Arrinex.  Plaintiff's Complaint, Doc. 1. para. 124 (for the fact that he interviewed with Arrinex – the receipts Plaintiff submitted, not currently part of the record, establish the date).  On information and belief, Plaintiff had conducted an initial interview, before requesting any reasonable accommodations, with Arrinex.

13. On May 22, 2018, Plaintiff filed his original Charge of Discrimination with the EEOC.

14. At the beginning of June 2018, defendant David Clapper, in his capacity as CEO of Minerva, spoke with the CEO of Arrinex.  Plaintiff's Complaint, Doc. 1, para. 127.

15. On June 13, 2018, Plaintiff Peterson filed his Amended Charge of Discrimination with the EEOC.

16. On September 7, 2018, Plaintiff filed his Second Amended Charge of Discrimination.

17. On December 4, 2018, the EEOC issued its Right-to-Sue Notice.

18. On January 30, 2019, Plaintiff Peterson filed his Complaint (Doc. 1), alleging claims of: disability discrimination, unlawful retaliation, breach of implied contract, and tortious interference

with a prospective business advantage or relationship. Additionally, Plaintiff seeks a declaration that the arbitration provision, described above, is unenforceable on unconscionability grounds.

## STATEMENT OF THE QUESTION(S) PRESENTED

1.     Because the parties in this case executed a valid Employment Agreement that contained a choice of law provision (requiring the application of California law) and a forum selection provision (identifying arbitration in San Mateo County, California as the agreed upon forum) governing disputes between the parties arising out of or related to Plaintiff's employment, and Defendants are amenable to process in California, should this case be dismissed based on forum non conveniens?

2.     If this case is not dismissed based on forum non conveniens, should the case nonetheless be dismissed for failure to state a claim because the parties agreed to arbitration in the Employment Agreement?

3.     If this case is not dismissed, should this Court compel arbitration and stay these proceedings to allow the Parties to undertake arbitration in California as they agreed in the Employment Agreement?

## ARGUMENT

### I.     Legal Standard.

Dismissal of cases based on forum non conveniens is a matter of discretion for the Court and will not be overturned absent a finding of an abuse of that discretion. *Kelvion, Inc. v. Petrochina Canada, Ltd.* 918 F.3d 1088, 1092 (10th Cir. 2019).

Section 2 of the Federal Arbitration Act "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract.'" *Sanchez v. Nitro-Lift Tech., L.L.C.*, 762 F.3d 1139, 1145 (10th Cir.

2014) (quoting 9 U.S.C. § 2.). "The Supreme Court has described 'this provision as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338 (2011)). Courts "must place arbitration agreements on equal footing with other contracts . . . and 'rigorously enforce' arbitration agreements according to their terms." *Id.* (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). The FAA has created a presumption in favor of arbitration. *See id.* And the Honorable Kathryn Vratil has highlighted: "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lynn v. General Elec. Co.*, 407 F.Supp.2d 1257, 1260 (D. Kan. 2006) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). "'This presumption in favor of arbitrability also applies where a party bound by an arbitration agreement raises claims founded on statutory rights.'" *Id.* (quoting *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995)).

## II. Because the parties agreed to resolve their disputes in San Mateo County, California under California law and Defendants are amenable to process in California, this case should be dismissed based on forum non conveniens.

As recently as March 15, 2019, the Tenth Circuit has expressed its favor for dismissal on the basis of forum non conveniens. *Kelvion, Inc. v. Petrochina Canada, Ltd.* 918 F.3d 1088 (10th Cir. 2019). When determining whether a case should be dismissed on the grounds of forum non conveniens when there is a forum selection clause, the court "must determine whether the forum selection clause controls, and if the clause controls and points to a state or foreign forum, then the court may apply the doctrine of forum non conveniens." *Id.* at 1091 (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013)). The Tenth

Circuit went on to state the following with regard to forum selection clauses and forum non conveniens:

> When determining whether to dismiss for *forum non conveniens*, the court grants no weight to the plaintiff's choice of forum of the parties' private interests, since these are deemed to have been fully expressed in the contract and weigh in favor of dismissal. *Id.* at 63-64, & n.8, 134 S.Ct. 568. **A "valid forum-selection clause should be given controlling weight in all but the most exceptional cases."** *Id.* at 63, 134 S.Ct. 568 (alteration omitted).
>
> (emphasis added) *Kelvion*, 918 F.3d at 1091.

Here, the parties entered into a binding and valid Employment Agreement. *See* Exhibit A. Plaintiff voluntarily signed, executed, and assented to the Employment Agreement, including the agreement to arbitrate and the forum selection provision contained therein. *See* Exhibit A. There are no grounds for revocation of this agreement, and enforcement of the agreement against Plaintiff is not unconscionable. The choice of law and forum-selection provisions are unambiguous and referenced numerous times throughout the Employment Agreement, at times in all-capital lettering:

> 12. *Arbitration and Equitable Relief.*
>
> A. *Arbitration.* IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES, AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COPMANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER, OR BENEFIT PLAN OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUIGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COPMANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, **SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL**

**PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1281.8 (THE "ACT"), AND PURSUANT TO CALIFORNIA LAW.**

**\*\*\*\*\*\*\*\*\*\*\***

B. *Procedure.* I AGREE……AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. **I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH CALIFORNIA LAW, INCLUDING THE CALIFORNIA CODE OF CIVIL PROCEDURE, AND THAT THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL CALIFORNIA LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH CALIFORNIA LAW, CALIFORNIA LAW SHALL TAKE PRECEDENCE.** I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING. **I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SAN MATEO COUNTY, CALIFORNIA.**

13. *General Provisions.*

A. *Governing Law; Consent to Personal Jurisdiction.* **This Agreement will be governed by the laws of the State of California without giving effect to any choice-of-law rules or principles that may result in the application of the laws of any jurisdiction other than California. To the extent any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal and exclusive jurisdiction and venue of the state and federal courts located in California for any lawsuit filed against me by the Company.**

See Exhibit A (emphasis in bold type added).

Here, the claims asserted all arise out of, relate to, or result from Plaintiff's employment with Minerva. For the reasons outlined herein, the agreement to arbitrate and to resolve all disputes between the parties in San Mateo County, California, and pursuant to California law is valid. The defendants are residents of California and are amenable to process in California. As a result, the Court should dismiss this case on the basis of forum non conveniens.

9

III.    **The arbitration, choice of law, and forum selection provisions in the Employment Agreement are valid and enforceable under either California or Kansas law.**

An agreement to arbitrate a controversy "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration is a matter of contract. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 1409 (1960). Here, Plaintiff acknowledges the existence of the Employment Agreement and further concedes that he signed the agreement. See Plaintiff's Complaint, Doc. 1, paragraphs 139 through 145. Plaintiff is correct; in fact, the agreement was signed by both Plaintiff and Minerva. See Exhibit A. Plaintiff further concedes that given the fully executed contract, Plaintiff must establish that the Employment Agreement was invalid as he attempts to do, albeit without many specific facts, in Count VI of his Complaint. See Plaintiff's Complaint, Doc. 1. Whether the Employment Agreement is enforceable is a matter of state law. *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1251 (10th Cir. 2018). In this case, the state law to be applied is California law because the Employment Agreement states that in Section 13(A) that the Agreement "will be governed by the laws of the State of California" and in Section 12 that arbitration shall be subject to California law. See Exhibit A. But even if Kansas law were to apply, which defendants expressly deny, the analysis is nearly the same and the outcome is identical. The provisions are enforceable and the agreement is valid.

### A.  The Agreement is valid under California Law

Fortunately, the Tenth Circuit Court of Appeals has addressed these exact issues more than once. The most instructive, and most recent, instance is *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240 (10th Cir. 2018). There, the Court was faced with an arbitration agreement after the lead plaintiff, Johana Beltran, filed suit in the United States District Court for the District of Colorado, asserting violations of antitrust laws, RICO, the FLSA, federal and state minimum wage laws, and

other state law claims. *Id.* Ms. Beltran was an au pair who signed an agreement with her employer that included, among other things, arbitration and choice of law provisions. *Id.* After filing suit, defendant APC filed a motion to compel arbitration, but the district court denied the motion, finding that the au pair contracts were "contracts of adhesion and procedurally unconscionable." *Id.* at 1249. But on appeal, the Tenth Circuit reversed that decision and remanded it back to the District Court, finding that although the au pair agreements were procedurally unconscionable, to a moderate degree and substantively unconscionable to a high degree, to the extent the agreement permitted the employer to unilaterally select the arbitrator, the au pair agreement was "not permeated by unconscionability, and thus unconscionable provision permitting agency to select arbitration provider could be severed from the contract" and that arbitration consistent therewith could be compelled. *Id.* at 1263.

Because the *Beltran* case is instructive, it will be principally relied upon here. As previously referenced, California law governs the enforceability of the Employment Agreement, including the arbitration provision. Under California law, the party "opposing arbitration bears the burden of proving any defense, such as unconscionability." *Beltran*, 907 F.3d at 1451 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC,* 55 Cal.4th 223, 145 Cal.Rptr.3d 514, 282 P.3d at 1224-25)).

Based on the allegations in Count VI of Plaintiff's Complaint [Doc. 1]. Defendants anticipate that Plaintiff will argue that the Employment Agreement, and corresponding arbitration provision, is unconscionable.[2] These arguments are without merit when viewed in the light most favorable to plaintiff and when California law is applied:

---

[2] Plaintiff asserts in his Complaint that the Employment Agreement was presented "as a condition of employment to Peterson on a take-it-or-leave-it basis"; that the document was "authored in its entirety by defendant Minerva"; that the "requirements placed upon plaintiff.....were – among other things – unconscionable by their very nature and

Under California law, "unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the terms must be so one-sided as to shock the conscience."

*Beltran*, 907 F.3d at 1452 (internal citations omitted).

Here, Plaintiff will likely argue that the agreement is both procedurally and substantively unconscionable. Accordingly, each will be addressed in turn.

<u>Procedural Unconscionability</u>

The principle issue to be determined by the Court in relation to procedural unconscionability is whether the agreement is a contract of adhesion. *Id.* A contract of adhesion results when a contract is "imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Beltran,* 907 F.3d at 1452-53. But as the Tenth Circuit points out, a determination that a contract is, in fact, a contract of adhesion is only the beginning of the analysis because contracts of adhesion are fully enforceable unless there certain other factors are present. *Id.* at 1453. The mere fact that an arbitration provision is included within a contract of adhesion only establishes "a modest degree of procedural unconscionability" and more is required to void the agreement. *Id.* The Tenth Circuit explains this concept, in relevant part, as follows:

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Baltazar v. Forever 21, Inc.,* 62 Cal.4th 1237, 200 Cal.Rptr.3d 7, 367 P.3d 6, 12 (2016). A contract may be oppressive if it involves a lack of negotiation and meaningful choice and may include surprise if the allegedly unconscionable provision is "hidden within a prolix printed form." *Pinnacle Museum,* 145 Cal.Rptr.3d 514, 282 P.3d at 1232 (quoting *Morris,* 27 Cal.Rptr.3d at 805). "There are degrees of procedural unconscionability. At one end of the

_____

effect"; and finally that the "subject arbitration requirement was unconscionable." See Plaintiff's Complaint, paragraphs 139, 140, 142, and 143.

spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability.  Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum."  *Baltazar*, 200 Cal.Rptr.3d 7, 367 P.3d at 12 (quotation marks omitted).  And "[b]ecause procedural unconscionability must be measured in a sliding scale with substantive unconscionability, our task is not only to determine *whether* procedural unconscionability exists, but more importantly, *to what degree* it may exist." *Morris*, 27 Cal.Rptr.3d at 806.

*Beltran*, 907 F.3d at 1452.

Although whether the Employment Agreement is a contract of adhesion may be an issue of fact to be determined during the course of this case, Defendants do not believe such an analysis is necessary at this point and will not, for purposes of this argument only, contest that the Employment Agreement is a contract of adhesion.  However, just like in *Beltran*, the facts pleaded establish that there was only a modest amount of procedural unconscionability present with this contract, and perhaps less.  Plaintiff Peterson was far more sophisticated than Ms. Beltran, an au pair who spoke a different language and was paid minimum wage.  Throughout the Complaint, Plaintiff asserts that he was a "top-performing sales representative"; that he ultimately became the "Area Sales Director" for Minerva; and that he had a "prior successful business relationship with defendant Minerva's President and CEO, defendant Clapper."  See Plaintiff's Complaint, Doc. 1 at paragraphs 5 and 6.  In addition, Plaintiff worked in an industry that dealt with complicated and proprietary issues, which required him to disclose any inventions and agree to confidentiality.  See Exhibit A.  And undoubtedly, Plaintiff was far more able than Ms. Beltran to secure other meaningful employment opportunities given his alleged sales experience.  To the extent there were likely other employment opportunities available for Plaintiff, and his interview with Arrinex during his employment Minerva suggest there were, it reduces the degree of procedural unconscionability of the agreement.  So whereas Ms. Beltran's situation resulted in only a modest degree of procedural unconscionability. Plaintiff Peterson's situation would result in even less.

Likewise, Plaintiff did not have any language barrier like Ms. Beltran, even though the Court determined that any such language barrier did not result in procedural unconscionability. *Id.* at 1254. Plaintiff Peterson cannot claim that he was a minor. He was not. As an experienced sale representative and because of his prior business relationship with defendant Clapper, Plaintiff Peterson cannot argue that he did not have experience with contracts, such as the Employment Agreement at issue, or that he did not understand what arbitration mean when he signed the agreement. As with Ms. Beltran, Plaintiff signed the agreement, which includes the following provision:

> E. *Voluntary Nature of the Agreement.* I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COPMANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES, AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORENY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

See Exhibit A, Section 12(E).

A review of the Employment Agreement demonstrates that it is straightforward, organized by relevant headings, that certain important provisions (many of those at issue here) are in all-capital type font to highlight their importance, that Plaintiff acknowledged that he read the agreement, understood the agreement, asked any questions he had about the agreement, and even was given the opportunity to consult legal counsel about the agreement. These statements in the Employment Agreement further undercut any alleged procedural unconscionability associated with the Employment Agreement. *See Beltran*, 907 F.3d at 1254-56. Accordingly, Defendants submit that the degree of procedural unconscionability associated with the Employment is

minimal.    As such, based on the sliding scale discussed in *Beltran*, the substantive unconscionability must be significant in order to rise to the level required under the FAA to strike down the agreement and deny a motion to compel arbitration.

Substantive Unconscionability

As indicated above, the other consideration in analyzing unconscionability is substantive unconscionability, which focuses on whether enforcement of the agreement will result in overly harsh or one-sided results.  This factor is also succinctly described by the Tenth Circuit in the *Beltran* case:

> The Supreme Court of California has variously described this as "overly harsh," "unduly oppressive," "so one-sided as to shock the conscience," or "unfairly one-sided."  *Baltazar*, 200 Cal.Rptr.3d 7, 367 P.3d at 11.  "All of these formulations point to the central idea that the unconscionability doctrine is concerned not with a 'simple old-fashioned bad bargain,' but with terms that are 'unreasonably unfavorable to the more powerful party.'" (citation omitted).

*Beltran*, 907 F.3d at 1256-57.

A careful review of the arbitration provision in Plaintiff's Employment Agreement reveals the following facts, which are all applicable to the analysis:

- The arbitration provision is included within the Employment Agreement under a hearing entitled "Arbitration and Equitable Relief";

- The arbitration provision is in all-capital type font – it is not buried or hidden in the Employment Agreement;

- The arbitration agreement is applicable to both Plaintiff's and the employer's claims;

- The arbitration agreement specifies that arbitration will be administered by Judicial Arbitration & Mediation Services, Inc. ("JAMS") pursuant to its employment and arbitration rules and procedures – neither the employer nor Plaintiff have the ability to unilaterally select an arbitrator or to alter the rules of the arbitration process;

- The arbitration agreement specifies that the employer will pay for any administrative or hearing fees associated with the arbitration that Plaintiff initiates, except that Plaintiff must pay arbitration filing fee, up to the amount Plaintiff would have paid to file a lawsuit;

These provisions are more fair and reasonable than those in the *Beltran* case.  And they do not produce one-sided or harsh results.  The agreement does not include any of fee- or cost-shifting provisions that courts have occasionally found to be unconscionable, and is in all respects a standard arbitration clause entitled to full enforcement by the Court.  *See, e.g.*, *Sanchez v. Nitro-Lift Tech., L.L.C.*, 762 F.3d 1139, 1148 (10th Cir. 2014); *Shankle v. B-G Maintenance Man. Of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999) (requiring employee to pay one-half of arbitrator's fees).

In *Beltran*, the Tenth Circuit determined that the only substantively unconscionable clause in the arbitration agreements at issue was the term permitting the employer to unilaterally select the arbitrator to decide the dispute.  *Id.* at 1262.  That term is not included within Plaintiff's Employment Agreement and, therefore, this Court should determine that the Agreement is not substantively unconscionable.

Overall Unconscionability

Because the Employment Agreement, at worst, only contains a modicum of procedural unconscionability and no substantive unconscionability, this Court should determine that the Employment Agreement (Exhibit A) is certainly not permeated with unconscionability.  Further, Plaintiff has not presented nor alleged that the Employment Agreement was signed under duress[3] or because of fraud.  As such, the Agreement is valid and should be enforced.  This case should be dismissed, or stayed, pending arbitration.

---

[3] Plaintiff acknowledged the lack of duress in the Agreement itself.

### B.  The Agreement is Valid under Kansas Law

Although the enforceability of the agreement should be determined under California law, the outcome is no different even in Kansas law is applied.  District Judge Lungstrom, in the unreported decision of *White v. Four B Corp*, 2011 WL 4688843 (D. Kan. Oct. 5, 2011), upheld an arbitration agreement after a detailed analysis of the unconscionability arguments made by the plaintiff in the case.  A copy of the *White* opinion is included as Exhibit B.  In *White*, the plaintiff argued that the arbitration provision was unenforceable because, in relevant part, it not supported by consideration, lacked mutuality, was illusory, and was unconscionable.  *Id.*  Judge Lungstrom correctly ruled that: (1) in consideration for plaintiff's agreement to arbitrate, defendant employer hired the plaintiff; (2) no mutuality was required in the agreement because the element of consideration had been met; (3) a provision permitting defendant to change its rules and regulations did not render the agreement illusory or unenforceable; and (4) the agreement was not unconscionable because, among other reasons, there was no deception on the part of the defendant and mere inequality in bargaining power was not enough to make the agreement unconscionable.  *White*, 2011 WL 4688843 at \*2-\*4.  With respect to the unconscionability argument, Judge Lungstrom stated in his opinion the following:

> While defendant in this case may have had superior bargaining strength and presented its employment application, including the arbitration clause, to plaintiff on a take-it-or-leave-it basis, there was no element of deception here.  The arbitration provision is written in relatively plain language, not confusing terms, and the agreement to arbitrate is reiterated immediately above the signature block in bold all-capital lettering. [citation omitted].
>
> \*\*\*\*\*\*\*\*\*\*
>
> In short, there is simply no allegation or evidence that defendant attempted to deceive plaintiff about the existence or substance of the arbitration provision.  Accordingly, plaintiff has not persuaded the court that the arbitration provision contained in the employment application should not be enforced based on principles of procedural unconscionability.

*Id.* at *4.  See Exhibit B.

Similarly here, there is no allegation or evidence to suggest that the arbitration provision in Plaintiff's Employment Agreement was hidden, or that defendant attempted to deceive Plaintiff. Rather, the arbitration provision is written in plain language, adequately marked under a hearing entitled "Arbitration," and is printed in all-capital lettering.  See Exhibit A.  So even under Kansas law, if the court were so inclined to apply it over California law, the Employment Agreement is enforceable and does not rise to the level of unconscionable.

### IV.  All claims asserted by Plaintiff in the Complaint are subject to arbitration.

Once it has been shown, as here, that the arbitration provision is enforceable, the next inquiry for the court is to determine whether all claims asserted by Plaintiff are arbitrable.  They are.

The liberal presumption in favor of arbitrability applies even when claims arise from statutory rights.  *See Sanchez v. Nitro-Lift Tech., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014).  In the Tenth Circuit, courts apply "a three-part test when determining whether an issue falls within the scope of an arbitration clause."  *Id.*  (citing *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)).

First, the court "should classify the particular clause as either broad or narrow."  *Id.* (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).  Second, "if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause."  *Id.*  "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview."  *Id.* However, "[w]here the arbitration clause is broad, there arises a presumption of arbitrability and

arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.*

Here, the Arbitration Agreement is broad, and a presumption of arbitrability arises. *Id.* The Agreement requires arbitration of "**any and all controversies, claims, or disputes with anyone (including the Company and any Employee, Officer, Director, Shareholder, or benefit plan of the Company, in their capacity as such or otherwise), whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from [Peterson's] employment with the Company or the termination of [his] employment with the Company, including any breach of this Agreement . . . .**" See Exhibit A, Employment Agreement, at 7-8 (emphasis added).   Like the agreement at issue in *Sanchez*, this arbitration provision must be construed as broad, and is therefore entitled to a presumption of arbitrability. *See id.* at 1147 ("we agree with the district court that the arbitration clause at issue here is broad. In fact, we have not found any case with an arbitration clause as broad as this, stating that '*[a]ny dispute, difference, or unresolved question* between' the parties must be arbitrated.") (emphasis in original); *see also P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (stating that arbitration clause covering any "controversy, claim, or breach *arising out of or relating to* this Agreement . . . is a 'broad' one").

Plaintiff has asserted six different causes of action in his Complaint:

Count I – Disability Discrimination in violation of 42 USC 12101 (ADA)

Count II – Retaliation in violation of 42 USC 12101 (ADA)

Count III – Retaliation in violation of Kansas Public Policy (Whistleblower)

Count IV – Breach of Implied Contract

Count V – Tortious Interference with a Prospective Business Advantage or Relationship

Count VI – Declaratory Relief arising from Disputed Arbitration Provision Concerning Plaintiff's Employment by Defendant Minerva Surgical

The question for the court is whether all of these claims are "arising out of, relating to, or resulting from [Peterson's] employment with the Company or the termination of [his] employment with the Company, including any breach of this Agreement."  See Exhibit A, Employment Agreement, at p. 7-8.  The claims made in Counts I through IV and Count VI undeniably arise out of, relate to, or result from his employment with Minerva.  Counts I-III involve discrimination and retaliation claims directly related to Plaintiff's employment.  See Plaintiff's Complaint, Doc. 1. Count IV alleges a breach of a purported implied contract related specifically to various policies of his employer, Minerva.  *Id.*  Accordingly, Count IV arises out of, relates to, or results from Plaintiff's employment.  Finally, Count VI of the Complaint claims declaratory relief related to the Employment Agreement and the arbitration provision at issue.  *Id.*  Plaintiff essentially concedes that these claims are subject to arbitration, if the Court finds the provision enforceable, in paragraph 144 of his Complaint because the only claim he argues is not encompassed by the arbitration clause are the tort claims made against defendant Clapper in Count V.  *Id.* at paragraph 144.

Despite plaintiff's contentions to the contrary, Plaintiff's claim in Count V of the Complaint, in fact, arises out of, relates to, or results from his employment with Minerva.  Count V – Tortious Interference with a Prospective Business Advantage or Relationship – should also be subject to arbitration.  The following allegations related to this cause of action demonstrate that, whether the Court uses a broad or even a narrow construction of the arbitration provision at issue, the claim arises out of, relates to, or results from his employment at Minerva (with phrases specifically linking the alleged facts to his employment in bold type for emphasis):

17.    **While on leave of absence** plaintiff sought alternative employment including employment with one such prospective employer, Arrinex Incorporated ("Arrinex") **in an attempt to resolve the situation** and provide for his family by simply **removing himself from his unhealthy work environment**.

18.    However, defendant Clapper proactively interfered with Peterson's economic opportunity **to gain employment** with Arrinex.  Clapper's undisputed contact with Arrinex in this regard corresponded with a phone call to plaintiff on or about June 6, 2018 by Arrinex effectively terminating **the employment opportunity**.  The referenced phone call from Arrinex to plaintiff is further affirmed by an email subsequently sent to Arrinex by plaintiff as a thank you for "bringing [Clapper's call to Arrinex's corporate office] to my attention" and to expressly state the information "disgreacefully" provided was "untrue and defamatory."

19.    **Minerva and defendant Clapper concurrently utilized plaintiff's weakened position of being on unpaid leave and unable to find alternative employment in an attempt to obtain a resignation from plaintiff, and/or to deny plaintiff's requested reasonable accommodation**.

20.    Because of plaintiff's inability to gain alternative employment due to unlawful interference by defendant Clapper, Peterson was then **forced to return to Minerva's unhealthy work environment despite not being provided the requested accommodations**.

127.    **Defendant Clapper was acting in this regard in both his individual capacity as well as his capacity as CEO on behalf of defendant Minerva**.

129.    Defendant Clapper, on information and belief, also made intentional and false claims that plaintiff Peterson had **cheated on business expenses relating to defendant Minerva**.

132.    The wrongful behavior set forth above of defendant Clapper, **acting for and on behalf of defendant Minerva**, represents intentional and tortious interference in the prospective business advantage and/or expectancy held by plaintiff Peterson with Arrinex.

133.    **Defendants' actions** as set forth above constitute one or more acts or unlawful interferences against plaintiff Peterson, and/or evidence of tortious interference, all in violation of plaintiff Peterson's rights to be free of same, and plaintiff has incurred actual and compensatory damages in an amount exceeding $75,000.00 as a result.

134.    As a direct and proximate result of the foregoing actions, **defendant Clapper and Minerva** are liable to plaintiff Peterson for his actual and compensatory damages in an amount exceeding $75,000.00.

135.   **Defendants**[sic] actions as described hereinabove were malicious and/or taken in reckless disregard for plaintiff Peterson's rights, and as such **subject defendants** to punitive damages in an amount exceeding $75,000.00.

WHEREFORE, plaintiff Peterson prays for the Court's order **against defendant Minerva** granting him judgment **as against defendants Clapper and Minerva**, jointly and severally, for his actual, compensatory, and punitive damages in an overall amount exceeding $75,000.00, for prejudgment interest, together with such other relief as the Court deems proper.

Plaintiff's alleged reason for seeking other employment with Arrinex, the basis for his tortious interference claims, was the allegedly unhealthy environment at Minerva. The alleged comments made by defendant Clapper related to Plaintiff's employment – a business expense issue. Plaintiff alleges that defendant Clapper was acting in his capacity as the CEO of Minerva, his employer. Plaintiff seeks damages for the alleged intentional interference from both defendant Clapper, one of his supervisors, and from Minerva, his employer. Plaintiff, in essence, claims that defendant Clapper's statements to Arrinex, as CEO of Minerva, were part of a larger scheme and intent by Plaintiff's employer to take advantage of, and discriminate or retaliate against, plaintiff. In that regard, alone, plaintiff's tortious interference claim, by his own allegations, is directly linked to his employer and his employment. As such, this Court should determine that all of plaintiff's claims arise out of, relate to, or result from his employment at Minerva (or alleged termination therefrom) and, as a result, are all arbitrable.

**V.     If dismissal is not granted, this Court should at least stay the proceedings to allow the parties to proceed with arbitration in California on plaintiff's claims.**

Should the Court decide not to dismiss the case, the proper course of action would be to stay the proceedings until arbitration is completed. *Beltran*, 907 F.3d 1240. That was the exact direction given by the Tenth Circuit in the *Beltran* case, when they determined that the arbitration provision was enforceable and such arbitration ought to take place in California. The outcome here should be no different. Whether through dismissal or a stay, if plaintiff wants to bring claims

22

against his employer or supervisor (David Clapper), he should be required to do so in the forum he voluntarily agreed to at the outset of his employment – by initiating arbitration in San Mateo, California.

WHEREFORE, defendants Minerva and Clapper respectfully request an order from this court dismissing plaintiff's Complaint or, in the alternative, compelling arbitration and staying these proceedings until such arbitration has been completed, and for any other relief the court deems just and proper.

Respectfully submitted,

/s/ Sean M. Sturdivan
Sean M. Sturdivan     KS#21286
SANDERS WARREN RUSSELL & SCHEER LLP
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, KS  66210
Phone: 913-234-6100
Fax:    913-234-6199
s.sturdivan@swrsllp.com
**Attorneys for Defendants Minerva Surgical Inc.
And David Clapper**

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of May, 2019, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

Albert F. Kuhl
LAW OFFICE OF ALBERT F. KUHL
15700 College Blvd., Suite 102
Lenexa, KS  66219
Phone: (913) 438-2760
Fax: (913) 327-8492
Email: al@kcjoblawyer.com
***ATTORNEY FOR PLAINTIFF***

 */s/ Sean M. Sturdivan*
Attorney