# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DANIEL PETERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 19-2050-KHV** |
| | ) | |
| **MINERVA SURGICAL, INC. and** | ) | |
| **DAVID CLAPPER,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On January 30, 2019, Daniel Peterson filed suit against Minerva Surgical, Inc. and David Clapper. <u>Complaint</u> (Doc. #1). Plaintiff alleges that defendants failed to make reasonable employment accommodations for his disabilities, retaliated against him by terminating his employment and interfered with his future employment. This matter is before the Court on <u>Defendants' Motion To Dismiss Or, In The Alternative, Stay Proceedings And Compel Arbitration</u> (Doc. #11) filed May 3, 2019. For reasons stated below, the Court sustains defendants' motion.

## Factual Background

Highly summarized, plaintiff's complaint alleges as follows:

Plaintiff was an employee of Minerva for over two and a half years. During the course of this employment, plaintiff suffered from one or more disabling conditions, which included anxiety and a condition stemming from a severe cervical spine injury that he sustained during military service. During his employment, plaintiff made requests for reasonable accommodations and in April of 2018, took a leave of absence. Over the next several months, plaintiff sought additional reasonable accommodations to allow him to return to work. Minerva denied these requests,

however, and instead made managerial realignments. To remove himself from an unhealthy work environment, plaintiff sought alternative employment during his leave of absence, including with Arrinex Incorporated. David Clapper, Minerva's Chief Executive Officer, told Arrinex that plaintiff had cheated on business expenses while working for Minerva.

Despite plaintiff's attempts to resolve the accommodation issues, Minerva did not allow him to return to work, and claimed that it had returned plaintiff to unpaid leave status. Minerva then claimed that plaintiff had voluntarily resigned. Plaintiff filed suit against Minerva and Clapper, alleging that they failed to make reasonable employment accommodations for his disabilities, retaliated by terminating his employment and interfered with his future employment.

Defendants ask the Court to dismiss or stay this action because plaintiff's employment agreement contained an enforceable arbitration clause, which encompasses all of his claims. The employment agreement contains a section titled "Arbitration and Equitable Relief," which states as follows:

> I agree that any and all controversies, claims, or disputes with anyone (including the company and any employee, officer, director, shareholder, or benefit plan of the company, in their capacity as such or otherwise), whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from my employment with the company or the termination of my employment with the company, including any breach of this agreement, shall be subject to binding arbitration . . . pursuant to California law.

Exh. A to Defendants' Motion To Compel Arbitration (Doc. #11) at 7. The agreement also contains a forum selection clause which specifies that "any arbitration under this Agreement shall be conducted in San Mateo County, California." Id.

## Legal Standard

Defendants assert that the Court should dismiss or stay this case and compel arbitration because they entered into a valid arbitration agreement with plaintiff, which the Court should

enforce pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.[1]  Congress enacted the FAA "in response to widespread judicial hostility to arbitration agreements."  Beltran v. AuPairCare, Inc., 907 F.3d 1240, 1250 (10th Cir. 2018) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).  Under the FAA, a written provision in "any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Id. (quoting 9 U.S.C. § 2).  Thus, the FAA directs the Court to determine (1) whether the parties "are bound by a given arbitration clause" and (2) whether the arbitration clause "applies to a particular type of controversy."  Id. (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)).  If the controversy is subject to an enforceable arbitration agreement, the Court will "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## Analysis

### I.        Enforceability Of Arbitration And Forum Selection Clauses

Defendants assert that they entered into an enforceable arbitration agreement with plaintiff. When parties have entered into an arbitration agreement, the Court determines whether it is unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." Beltran, 907 F.3d at 1250-51.  Accordingly, the Court can invalidate an arbitration agreement under "generally applicable contract defenses, such as fraud, duress, or unconscionability."  Id. at

---

[1]        The parties do not dispute that the FAA applies to plaintiff's claims.  See Exh. A to Defendants' Motion To Compel Arbitration (Doc. #11) at 8 ("The Federal Arbitration Act shall continue to apply with full force and effect . . . .").

1251. State law governs these defenses. Id. Here, the parties do not dispute that pursuant to the choice-of-law provision in their arbitration agreement,[2] California law governs the enforcement of the agreement. Id. (applying California law pursuant to choice-of-law provision in agreement).

California law, like federal law, "favors enforcement of valid arbitration agreements." Id. (citing Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 678 (2000)). Accordingly, after the party seeking arbitration proves the existence of an arbitration agreement,[3] "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." Id. (citing Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), 55 Cal.4th 223, 145 Cal.Rptr.3d 514, 282 P.3d 1217, 1224 (2012)). Under California law, "[u]nconscionability consists of both procedural and substantive elements." Id. (citing Pinnacle Museum, 145 Cal.Rptr.3d 514, 282 P.3d at 1232). As the Tenth Circuit has described, California courts measure procedural unconscionability and substantive unconscionability on a sliding scale. Id. (citing Morris v. Redwood Empire Bancorp, 128 Cal.App.4th 1305, 27 Cal.Rptr.3d 797, 807 (2005). Under this approach, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Morris, 27 Cal.Rptr.3d at 806 (citing Armendariz, 24 Cal.4th at 114, 99 Cal.Rptr.2d 745, 6 P.3d 669).

A.      **Procedural Unconscionability**

Plaintiff argues that his arbitration agreement with defendants, including the forum

---

[2]      The arbitration agreement contains a clause which specifies that the agreement "will be governed by the laws of the State of California without giving effect to any choice-of-law rules or principles that may result in the application of the laws of any jurisdiction other than California." Exh. A to Defendants' Motion To Compel Arbitration (Doc. #11) at 9.

[3]      The parties here do not dispute that an arbitration agreement exists. Complaint (Doc. #1) ¶¶ 139, 140, 141.

selection clause, is procedurally unconscionable because it is an adhesion contract. Specifically, plaintiff asserts that he did not have an option to refuse the arbitration agreement. Under California law, procedural unconscionability "focuses on oppression or surprise due to unequal bargaining power." Beltran, 907 F.3d at 1250-51 (citing Baltazar v. Forever 21, Inc., 62 Cal.4th 1237, 200 Cal.Rptr.3d 7, 367 P.3d 6, 12 (2016)). Procedural unconscionability is not a strict "yes or no" dichotomy, but is instead a matter of degree. Id. At one end of the spectrum "are contracts that have been freely negotiated by roughly equal parties," while at the other end are contracts of adhesion "that involve surprise or other sharp practices." Id. (citing Baltazar, 200 Cal.Rptr.3d at 7, 367 P.3d at 12). Accordingly, the Court's task is "not only to determine *whether* procedural unconscionability exists, but more importantly, *to what degree* it may exist." Id. (citing Morris, 27 Cal.Rptr.3d at 806) (emphasis in original).

The procedural unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion," in which the party of superior bargaining strength drafts and imposes the agreement on the subscribing party. Id. (citing Armendariz, 99 Cal.Rptr.2d 745, 6 P.3d at 689 and Sonic-Calabasas A, Inc. v. Moreno, 57 Cal.4th 1109, 163 Cal.Rptr.3d 269, 311 P.3d 184, 194 (2013)). However, the fact that an agreement is adhesive does not, by itself, make it procedurally unconscionable. Id. An adhesion contract "is fully enforceable according to its terms unless certain other factors are present." Id. (citing Perdue v. Crocker Nat'l Bank, 38 Cal.3d 913, 216 Cal.Rptr. 345, 702 P.2d 503, 511 (1985)). Accordingly, an adhesive arbitration agreement, by itself, establishes "only a modest degree of procedural unconscionability." Id. (citing Carbajal v. CWPSC, Inc., 245 Cal.App.4th 227, 199 Cal.Rptr.3d 332, 345 (2016).

Here, plaintiff does not identify factors other than the agreement's adhesiveness to show procedural unconscionability. Instead, he merely points to defendants' concession that their

agreement is adhesive,[4] and then proceeds to discuss substantive unconscionability. Therefore, "any procedural unconscionability from the adhesive nature of the contract is at most modest." Id. (finding only modest degree of procedural unconscionability because plaintiff did not show factors other than adhesive agreement).

B.      **Substantive Unconscionability**

Plaintiff does not argue that the arbitration clause itself is substantively unconscionable. Instead, he asserts that the forum selection clause within the arbitration agreement is substantively unconscionable, and that the Court should sever it.   Under California law, substantive unconscionability focuses on "overly-harsh" or "one-sided results."   Id. (citing Armendariz, 99 Cal.Rptr.2d 745, 6 P.3d at 690).   More specifically, the Supreme Court of California assesses whether the agreement is "overly harsh," "unduly oppressive," "so one-sided as to shock the conscience" or "unfairly one-sided."   Id. (citing Baltazar, 200 Cal.Rptr.3d 7, 367 P.3d at 11). These descriptions "point to the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain,' but with terms that are 'unreasonably favorable to the more powerful party.'"   Id. (citing Baltazar, 200 Cal.Rptr.3d 7, 367 P.3d at 11).

Here, plaintiff focuses his discussion of substantive unconscionability on the forum selection clause, and does not address the arbitration clause itself.   Therefore, absent argument to the contrary, the Court finds that the arbitration clause is not substantively unconscionable.   See id. (arbitration clause itself not substantively unconscionable).   Accordingly, combined with only a modest amount of procedural unconscionability, the arbitration clause is not unconscionable.   As a result, the Court will enforce it.

---

[4]        For the purposes of this motion, defendants concede that their agreement with plaintiff is adhesive.   Defendants' Motion To Compel Arbitration (Doc. #11) at 13.

Plaintiff argues that the forum selection clause that specifies California as the place of arbitration is substantively unconscionable, and that the Court should sever this clause. Under California law, forum selection clauses "are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." Id. (citing Smith, Valentino & Smith, Inc. v. Superior Court, 17 Cal.3d 491, 131 Cal.Rptr. 374, 551 P.2d 1206, 1209 (1976)). A party can show unreasonableness by demonstrating that enforcing the clause would be "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." Id. (quoting Aral v. Earthlink, 134 Cal.App.4th 544, 36 Cal.Rptr.3d 229, 241-42 (2005), abrogated on other grounds by Concepcion, 563 U.S. 333). However, "[m]ere inconvenience or additional expense is not the test of unreasonableness." Id. (quoting Smith, 131 Cal.Rptr. 374, 551 P.2d at 1209). Accordingly, it is insufficient to simply show "the additional expense and inconvenience attendant on the litigation of . . . claims in a distant forum." Id. (citing Smith, 131 Cal.Rptr. 374, 551 P.2d at 1209). Indeed, as one California court made clear, "even the costs of traveling internationally are not sufficient to render the forum selection clause in an employment agreement unreasonable." Id. (citing Intershop Commc'ns, AG v. Superior Court, 104 Cal.App.4th 191, 127 Cal.Rptr.2d 847 (2002)).

A party can also demonstrate unreasonableness by showing that when the parties entered the contract, the forum selection clause did not provide adequate notice of the selected jurisdiction and, as a result, the party could not reasonably expect to resolve the dispute in that jurisdiction or the forum bears no relationship to the contract at issue. Id. (citing Magno v. The College Network, Inc., 1 Cal.App.5th 277, 204 Cal.Rptr.3d 829, 838 (2016)).

Here, plaintiff has not met his burden of showing that the forum selection clause is substantively unconscionable. Plaintiff primarily argues that arbitrating in San Mateo County,

California will be inconvenient because he will miss work and incur various expenses traveling from Kansas.  He notes similar burdens for his witnesses.  These inconveniences are insufficient to establish substantive unconscionability.  See id. (California forum selection clause not substantively unconscionable even though parties would need to travel from Virginia, Pennsylvania and Michigan).  Moreover, plaintiff has not shown that the agreement failed to provide adequate notice of the selected forum.  Indeed, under a section heading "Arbitration and Equitable Relief," the agreement explicitly states, in all caps, that "ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SAN MATEO, CALIFORNIA."  Exh. A to Defendants' Motion To Compel Arbitration (Doc. #11) at 8.  Multiple other provisions also specifically identify California as the relevant jurisdiction.  Accordingly, the forum selection clause, combined with only a modest amount of procedural unconscionability, is not unconscionable.  See Beltran, 907 F.3d at 1250-51 (plaintiff had adequate notice of forum because multiple paragraphs in agreement clearly reference California).  As a result, the Court will enforce it.

## II.    Scope Of Arbitration Clause

Plaintiff asserts that even if he entered an enforceable arbitration agreement with defendants, the agreement does not encompass Count V of the complaint, which alleges that defendants tortiously interfered with plaintiff's future employment.  The Tenth Circuit applies a three-part test to determine whether an issue falls within the scope of an arbitration clause.  Sanchez v. Nitro-Lift Techs., L.L.C., 762 F.3d 1139, 1146 (10th Cir. 2014).  First, "recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow."  Id. (quoting Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001)).  Second, if the clause is narrow, the Court

determines whether the dispute is "over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." Id. (quoting Louis Dreyfus Negoce S.A., 252 F.3d at 224). Finally, if the arbitration clause is broad, there "arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Id.

Here, the arbitration clause at issue requires arbitration of:

> any and all controversies, claims, or disputes with anyone (including the Company and any Employee, Officer, Director, Shareholder, or benefit plan of the Company, in their capacity as such or otherwise), whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from [Peterson's] employment with the Company or the termination of [his] employment with the Company, including any breach of this Agreement . . . .

Exh. A to Defendants' Motion To Compel Arbitration (Doc. #11) at 7-8. This arbitration clause is extremely broad. Indeed, it mirrors the arbitration clause in Sanchez, which the Tenth Circuit noted was broader than in any prior cases. Sanchez, 762 F.3d at 1146 (arbitration clause covering "[a]ny dispute, difference or unresolved question" between the parties). As a result, the presumption of arbitrability applies, even on matters collateral to the employment agreement so long as the alleged claim "implicates issues of contract construction or the parties' rights and obligations under it." Id.

Plaintiff has not overcome this presumption of arbitrability. He argues that his tort claim under Count V "did not have its genesis in the Peterson/Minerva workplace," and it does not "derive from any action taken within the Minerva workplace." Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss And/Or To Compel Arbitration (Doc. #18) at 23. Rather, "it is engendered solely by unreasonable and wrongful conduct manifested by defendant Clapper alone," and is therefore "independent of that workplace in all material respects." Id.

Plaintiff's arguments are unpersuasive. Although Count V involves a matter collateral to the contract itself, it implicates a dispute resulting from plaintiff's employment with defendants – a kind of dispute which their arbitration agreement explicitly covers. Indeed, the allegations under Count V stem directly from the discrimination, retaliation and breach of contract allegations under the remaining counts. Specifically, the complaint alleges that "while on leave of absence" with defendants, plaintiff sought different employment with Arrinex for the purpose of "remov[ing] himself from his unhealthy work environment" with defendants. Complaint (Doc. #1) ¶ 17. When he attempted to do so, Clapper acted "for and on behalf of defendant Minerva" by telling Arrinex that plaintiff "had cheated on business expenses relating to" his employment with Minerva. Id. ¶ 132, 129. Thus, Count V is not – as plaintiff suggests – limited to Clapper's conduct alone and independent of defendants' workplace. To the contrary, the allegations in Count V implicate his employment with Minerva and involve a dispute resulting directly from that employment. Therefore, plaintiff's arbitration agreement with defendants encompasses Count V.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss Or, In The Alternative, Stay Proceedings And Compel Arbitration (Doc. #11) filed May 3, 2019 is **SUSTAINED**. The Court stays this action until the parties complete arbitration in San Mateo, California. Starting November 1, 2019, and at six-month intervals thereafter, the parties shall file joint reports on the status of said arbitration.

Dated this 23rd day of October, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge