# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DANIEL PETERSON, )<br>)<br>        **Plaintiff,** )<br>)<br>v. )<br>)<br>MINERVA SURGICAL, INC. and )<br>DAVID CLAPPER, )<br>)<br>        **Defendants.** )<br>_____) | CIVIL ACTION<br><br>No. 19-2050-KHV |

## MEMORANDUM AND ORDER

On January 30, 2019, Daniel Peterson filed suit against Minerva Surgical, Inc. and David Clapper, alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq. (Count I), retaliation in violation of the ADA (Count II), retaliation in violation of Kansas public policy (Count III), breach of implied contract (Count IV) and tortious interference with prospective business advantage (Count V).  See Complaint (Doc. #1).  In addition, plaintiff sought a declaratory judgment on the enforceability of the arbitration provision within his employment contract (Count VI).  See id.  On October 23, 2019, the Court sustained defendants' motion to compel arbitration.  See Memorandum And Order (Doc. #30).

This matter is before the Court on Plaintiff's Motion To Reopen Case & Vacate Arbitration Award (Doc. #41) filed September 22, 2023 and Defendants' Response To Plaintiff's Motion To Reopen Case And Vacate Arbitration Award And Application For Order Confirming Arbitration Award (Doc. #52) filed November 3, 2023.  For reasons set forth below, the Court overrules plaintiff's motion and sustains defendants' motion to confirm the arbitration award.

## Legal Standard

The Court's power to review an arbitration panel award is quite limited; indeed, it is

"among the narrowest known to the law." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995). Courts must afford maximum deference to the decisions of the arbitrator and will only set aside the decision in "very unusual circumstances." Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 568 (2013); THI of N.M. at Vida Encantada, LLC v. Lovato, 864 F.3d 1080, 1083 (10th Cir. 2017). The party seeking to vacate an arbitrator's award therefore "bears a heavy burden." Oxford Health Plans, 569 U.S. at 569.

Section 10 of the Federal Arbitration Act ("FAA") enumerates the grounds on which the Court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition, the Tenth Circuit recognizes violation of public policy, manifest disregard of the law and denial of a fundamentally fair hearing as grounds to vacate. Sheldon v. Vermonty, 269 F.3d 1202, 1206 (10th Cir. 2001).

Aside from these limited circumstances, Section 9 of the FAA requires courts to confirm arbitration awards. THI of N.M., 864 F.3d at 1084; 9 U.S.C. § 9 ("At any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order."). In reviewing an arbitration award, the Court must "give extreme deference to the determination of the arbitration

panel for the standard of review of arbitral awards is among the narrowest known to law." Hollern v. Wachovia Sec., Inc., 458 F.3d 1169, 1172 (10th Cir. 2006) (quoting Brown v. Coleman Co., 220 F.3d 1180, 1182 (10th Cir. 2000)). "Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." Ormsbee Dev. Co. v. Grace, 668 F.2d 1140, 1146–47 (10th Cir. 1982).

**Factual Background**

The factual background underlying the parties' dispute is set forth in detail in the Court's Memorandum And Order (Doc. #30) filed October 23, 2019.

Highly summarized, Minerva employed plaintiff for over two and a half years as an Area Sales Director. In that role, plaintiff worked as an intermediary between the sales and engineering teams and acted as a "go-to resource" on product functionality and patient safety. Complaint (Doc. #1), ¶ 10. Sometime between late 2017 and early 2018, Minerva introduced a redesigned medical device product (the "ES")—which plaintiff assisted in designing—to replace a prior device (the "Classic"). Minerva informed the sales team that it would not be recalling the Classic. In April of 2018, plaintiff voiced concerns to management about performance problems with the Classic and whether Minerva should continue to sell them. On August 3, 2018, Minerva terminated plaintiff's employment.

During his employment, plaintiff agreed to arbitrate all disputes "arising out of, relating to, or resulting from [plaintiff's] employment with the company or the termination of [his] employment with the company." Employment Agreement (Doc. #13-1) filed May 3, 2019 at 7–8. On January 30, 2019, plaintiff filed suit against Minerva and Clapper (Minerva's President and Chief Executive Officer), alleging that they failed to make reasonable employment accommodations for his disabilities, retaliated by terminating his employment and interfered with

his future employment. See Complaint (Doc. #1). Plaintiff asserts that Minerva and its employees knew of the design defects in the Classic. Further, he contends that because he "blew the whistle" on the known defect, Minerva retaliated and terminated his employment. See Motion To Reopen Case (Doc. #41).

## Procedural Background

On October 23, 2019, the Court sustained defendants' motion to compel arbitration pursuant to the arbitration clause in plaintiff's employment agreement. See Memorandum And Order (Doc. #30). On May 18, 2021, the Court administratively closed the case based on the pending arbitration proceedings. See Order (Doc. #39).

On January 31, 2020, plaintiff filed a Demand for Arbitration with the Judicial Arbitration and Mediation Services, Inc. ("JAMS"), an alternative dispute resolution company, against Minerva, Clapper and Thomas Pendlebury (Minerva's Vice President of Sales). Final Arbitration Award (Doc. #52-1) filed November 2, 2023 at 3. Plaintiff asserted claims for disability discrimination, failure to accommodate, retaliation, wrongful termination, breach of implied contract, tortious interference with prospective business advantage, negligent interference with economic relations, defamation and patent correction. Id. On September 22, 2021, Minerva filed a cross-complaint against plaintiff for breach of contract, misappropriation of trade secrets and breach of duty of loyalty. Id.

Beginning on May 15, 2023 and lasting five days, the Honorable Richard J. McAdams (Ret.) conducted the arbitration hearing remotely by Zoom. Id. at 4. On June 15, 2023, the arbitrator issued an Interim Award finding that Minerva, Clapper and Pendlebury were not liable and that plaintiff had breached his contract with Minerva. Id. at 6. On August 21, 2023, JAMS

issued its final award, ordering plaintiff to pay Minerva $198,558.94[1] and return all confidential documents and property.  Id. at 22–27.

On September 22, 2023, plaintiff, proceeding pro se, filed this motion to reopen the case and vacate the arbitration award.  See Motion To Reopen Case (Doc. #41).  On November 2, 2023, defendants filed their application for an order confirming the arbitration award.  See Application For Order Confirming Arbitration Award (Doc. #52).

**Analysis**

Initially, defendants argue that plaintiff's motion to reopen his case and vacate the arbitration award does not follow the procedural requirements set forth in the District of Kansas Local Rules.  Specifically, defendants assert that plaintiff's motion did not contain (1) a statement of the specific relief sought; (2) a statement of the nature of the matter before the Court; (3) a concise statement of the facts with citations to the record; and (4) his argument, referring to all statutes and authorities relied on.  See D. Kan. Local Rule 7.1(a).  Further, defendants point out that plaintiff's 36-page motion exceeds the rule's 15-page limit.  See D. Kan. Local Rule 7.1(d)(3).

Even though the Court liberally construes the pleadings of pro se litigants, see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), they must still comply with procedural rules which govern the action.  Yang v. Archuleta, 525 F.3d 925, 927 n.1 (10th Cir. 2008).  After reviewing plaintiff's motion, the Court concludes that plaintiff did not comply with Rule 7.1(a) because his statement of facts (7 pages) was not concise and did not provide citations to the record.  Moreover, plaintiff's motion clearly exceeds the 15-page limit.  Because plaintiff did not follow the procedural requirements set forth in the Local Rules, the Court overrules his motion.

---

[1]  The arbitrator awarded Minerva $7,029.94 for breach of contract, $190,000 in attorney fees and $1,529 in costs.

Even if plaintiff had filed a proper motion, he has not shown that relief is warranted under Section 10 of the FAA to vacate the arbitration award.

**I.      Vacating The Arbitration Award**

Plaintiff argues that the Court should reopen his case and vacate the arbitration award because (1) Minerva presented unsupported evidence that there was "nothing unsafe" about the Classic; (2) Minerva abused the legal system by requiring arbitration; (3) Minerva fraudulently concealed and misrepresented the safety of the Classic; and (4) the arbitrator made various mistakes of law in analyzing the claims.

Defendant responds that (1) plaintiff has not addressed or sufficiently argued any grounds for vacating the award; and (2) plaintiff is asserting factual arguments already addressed and decided by the arbitrator. For these reasons, defendants request the Court overrule plaintiff's motion and confirm the final award.

A.      Undue Means

Plaintiff argues that because Minerva presented unsupported evidence in arbitration and abused the legal system by requiring arbitration, the arbitration award was procured by "undue means" and the Court must vacate the award.

To vacate an arbitration award based on undue means, the movant must show that (1) the undue means were not discoverable upon the exercise of due diligence prior to or during the arbitration and (2) a nexus exists between the alleged undue means and the basis for the arbitrator's decision. See Forsythe Int'l, S.A. v. Gibbs Oil Co., 915 F.2d 1017, 1022 (5th Cir. 1990); Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir. 1988). The party asserting that the award was procured by undue means must establish the undue means by clear and convincing evidence. Bonar, 835 F.2d at 1383. Undue means generally require behavior that is "immoral if

not illegal" or "otherwise in bad faith."  A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403 (9th Cir. 1992); MPJ v. Aero Sky, L.L.C., 673 F. Supp. 2d 475, 494 (W.D. Tex. 2009).

Plaintiff's allegations do not rise to the level of undue means under this test.  First, plaintiff claims that the evidence did not support Minerva's testimony that there was nothing unsafe about the Classic.  Because of this, plaintiff asserts that the arbitrator incorrectly believed that the device was safe, which undermined his claims.  This argument appears to be nothing more than a factual dispute—which the arbitrator resolved—as to whether the Classic was actually safe.  Because plaintiff's motion attempts to rehash the evidence and arguments that he previously presented to the arbitrator, it is not a sufficient ground on which to vacate the final award.  See Cessna Aircraft Co. v. Avcorp Indus., Inc., 943 F. Supp. 2d 1191, 1198 (D. Kan. 2013) ("It is the [arbitrator]'s role—not the court's—to assess expert credibility, weigh the evidence, and make findings of fact.").

Second, plaintiff claims that Minerva obtained its award by misusing aspects of the legal system to its advantage.  Specifically, he argues that Minerva unjustly used a mandatory arbitration agreement, asserted denials in its arbitration pleadings and employed its lawyers to encourage settlement of the dispute.  Plaintiff has not provided, and the Court does not find, supporting authority for the proposition that such litigation tactics amount to misuse of the legal system.  As such, plaintiff has not shown that defendants obtained the arbitration award through undue means.  Accordingly, the Court overrules plaintiff's motion on this ground.

B.   Fraud

Plaintiff argues that the Court should vacate the arbitration award because defendants procured it through fraud, including by making misrepresentations and concealing known safety issues.

To vacate an arbitration award based on fraud, the movant must establish by clear and convincing evidence that (1) due diligence could not have resulted in the discovery of the fraud prior to the arbitration and (2) there is a nexus between the alleged fraud and the basis for the arbitrator's decision.  Foster v. Turley, 808 F.2d 38, 42 (10th Cir. 1986); Forsythe, 915 F.2d at 1022.  To protect the finality of arbitration decisions, courts must use caution in vacating an award based on fraud.  Foster, 808 F.2d at 42.  "Fraud requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence."  MPJ, 673 F. Supp. 2d at 494.

For purposes of vacating the arbitration award, plaintiff has not shown fraud.  Plaintiff alleges six instances of fraud: (1) Minerva's patent application for the ES device contradicts its arbitration testimony about the safety of the Classic; (2) Minerva's ES patent contradicts its arbitration testimony that it did not create the device to correct the Classic design; (3) because the United States Food and Drug Administration ("FDA") approved the ES device, Minerva thought it could ignore the design defects of the Classic; (4) Minerva used misleading patient injury reports submitted to the FDA to demonstrate the safety of the Classic; (5) Minerva falsely marketed ES as a "safer device;" and (6) Minerva concealed actual patient injury rates prior to the 2018 national sales meeting.

To begin, the Court disregards claims (3) through (6) because they involve conduct that occurred prior to and wholly separate from the arbitration proceedings and cannot form the basis for vacating the award.  As to the first two allegations of fraud, plaintiff raises a factual dispute whether the Classic was safe and whether Minerva offered credible testimony in arbitration.  The arbitrator decided these matters and the Court will not interfere with his determinations.  Plaintiff's allegations do not demonstrate fraud and the Court therefore overrules plaintiff's motion on this

ground.

### C. Manifest Disregard Of The Law

Plaintiff argues that the Court must vacate the arbitration award because the arbitrator applied the incorrect legal standard to his retaliation claim and Minerva's counterclaim.

Manifest disregard of the law requires "willful inattentiveness to the governing law." Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932 (10th Cir. 2001). It is not sufficient to show that the arbitrator misunderstood the law or made an error; the record must show that "the arbitrator[] knew the law and explicitly disregarded it." Id.

Plaintiff asserts that the arbitrator acted in manifest disregard of the law on two occasions. First, plaintiff contends that although the arbitrator correctly cited California Labor Code § 1102.5, he actually applied California Government Code § 12940(b) to decide the retaliation claim. Plaintiff claims that California Labor Code § 1102.5 contains whistleblower protections that would have shifted the burden of proof to Minerva, allowing him to better argue his claims. At most, this might suggest that the arbitrator misapplied or misinterpreted the governing law, but not that he explicitly disregarded it.

Second, plaintiff complains that Minerva never presented evidence of damages, and yet the arbitrator found breach of contract. Again, however, plaintiff attempts to challenge the factual findings of the arbitrator. At most, plaintiff demonstrates a factual dispute as to the correct amount of any damages, rather than the arbitrator's willful inattentiveness or explicit disregard for the law. Accordingly, the Court overrules plaintiff's motion on this ground.

## II. Confirming The Arbitration Award

Because the Court decides that plaintiff provides no reason for the Court to vacate the award, it turns to defendants' request for an order confirming the award. Before the Court can

confirm an arbitration award, it must determine whether it has jurisdiction to do so and whether this Court is the proper venue under Section 9 of the FAA.

  A. <u>Jurisdiction</u>

In arbitration confirmation cases, the jurisdictional analysis is two-fold. See <u>P & P Indus., Inc. v. Sutter Corp.</u>, 179 F.3d 861, 866 (10th Cir. 1999). First, because the FAA does not confer federal question jurisdiction, the movant must show that the Court has subject matter jurisdiction over the matter. <u>Id.</u> Second, the movant must demonstrate that the parties agreed, either explicitly or implicitly, to have a court enter judgment on the arbitration award. <u>Oklahoma City Assocs. v. Wal-Mart Stores, Inc.</u>, 923 F.2d 791, 794–95 (10th Cir. 1991).

Neither party disputes that the Court has subject matter jurisdiction over this matter. Moreover, "[w]hen a court with subject-matter jurisdiction orders arbitration and then stays the suit pending resolution of the arbitral proceedings, that court retains jurisdiction to confirm or set aside the arbitral award." <u>Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC</u>, 12 F.4th 1212, 1227 (10th Cir. 2021) (citation omitted). Accordingly, the Court has subject matter jurisdiction to confirm the award.

Similarly, neither party disputes that they consented to judicial confirmation of the arbitration award. The arbitration provision of plaintiff's employment agreement with Minerva explicitly states, "I agree that the decree or award rendered by the arbitrator may be entered as a final and binding judgment in any court having jurisdiction thereof." <u>Employment Agreement</u> (Doc. #13-1) at 8. Because the parties agreed that a federal court may enter an order confirming the award, the Court has jurisdiction to do so.

  B. <u>Venue</u>

If the arbitration agreement does not designate a specific court to confirm the award, an

application "may be made to the United States court in and for the district within which such award was made."  9 U.S.C. § 9.  Authority under the FAA to confirm an arbitration award, however, is not limited to the district court where the award was made.  P & P Indus., Inc., 179 F.3d at 870.  The FAA venue provision does not displace the general venue provisions of 28 U.S.C. § 1391(a).  Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 198–202 (2000).

Here, the arbitration agreement specifies that "any court" may enter judgment.  Employment Agreement (Doc. #13-1) at 8.  Under Section 9 of the FAA, because the arbitrator made the award in California, the United States district courts in that state qualify as a proper venue to confirm the award.  This Court, however, is also a proper venue under 28 U.S.C. § 1391(b)(2).  Because "a substantial part of the events or omissions giving rise to the claim occurred" in Kansas, this Court also has authority under Section 9 to confirm the award.  See Complaint (Doc. #1) at 1.

### III. Conclusion

Section 9 of the FAA requires federal courts with jurisdiction to confirm arbitration awards "unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title."  9 U.S.C. § 9; THI of N.M., 864 F.3d at 1084.  As analyzed above, the Court overrules plaintiff's motion to vacate the arbitration award.  In addition, neither party requests that the Court modify or correct the award.  Because the record discloses no ground on which to vacate, modify or correct the arbitration award, and all jurisdiction and venue requirements are met, the Court sustains defendants' motion for an order confirming the arbitration award.  The Court therefore finds that defendants are entitled to judgment confirming the Final Arbitration Award (Doc. #52-1) filed November 2, 2023, including all such relief provided in the final award.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion To Reopen Case & Vacate

Arbitration Award (Doc. #41) filed September 22, 2023 is **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendants' Response To Plaintiff's Motion To Reopen Case And Vacate Arbitration Award And Application For Order Confirming Arbitration Award (Doc. #52) filed November 3, 2023 is **SUSTAINED**.  **The Court confirms the Final Arbitration Award (Doc. #52-1) filed November 2, 2023, and directs the Clerk to enter judgment accordingly.**

Dated this 8th day of December, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge